Ann CUPOLO; Fred Nisen; Debbie Kaplan; Todd Groves; Elizabeth Starr; Guy Thomas; Susan Haight–Liotta; Lance Richard; and Mark Hendrix on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BAY AREA RAPID TRANSIT; Sherwood Wakeman, in his official capacity as General Manager of Bay Area Rapid Transit, Defendants.

No. C 96–02991 CW.

United States District Court, N.D. California.

Sept. 29, 1997.

Rosemarie Richard, Oakland, CA, Laurence W. Paradis, Disability Rights Advocates, Oakland, CA, Margaret Jakobson, Protection and Advocacy, Inc., Oakland, CA, for Ann Cupolo, Fred Nisen, Debbie Kaplan, Todd Groves, Elizabeth Starr, Guy Thomas, Susan Haight–Liotta, Mark Hendrix, Leila Massey.

Clement L. Glynn, Glynn & Finley, Walnut Creek, CA, for Bay Area Rapid Transit.

## ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

WILKEN, District Judge.

Plaintiffs Ann Cupolo, *et al.*, move for a preliminary injunction. Defendants Bay

Area Rapid Transit and its General Manager, Sherwood Wakeman, (collectively "BART") oppose the motion. The matter was heard on September 12, 1997. Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS the motion.

## BACKGROUND

### I. Procedural Posture and Requested Relief

In this action, Plaintiffs allege that BART has systematically failed to provide individuals with mobility disabilities equal access to its mass transportation services. Plaintiffs contend that this failure violates the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.;* the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.;* and a number of California statutes, including the California Disabled Persons Act, Cal.Civ. Code § 54 *et seq.;* and the common carrier negligence statute, Cal.Civ.Code § 2100 *et seq.* In Orders dated June 2, 1997, the Court granted Plaintiffs' motions for class certification and bifurcation of trial and granted summary adjudication in Plaintiffs' favor with regard to BART ticket vending and fare collection equipment. Trial of BART's liability on other issues related to accessibility is scheduled to begin on January 26, 1998.

Plaintiffs now move for a preliminary injunction concerning maintenance and repair of BART elevators. Their proposed injunction provides:

> Defendant BART is ordered to immediately improve its maintenance and repair program for BART elevators as follows:
>
> (i) Ensure that the original manufacturer's specifications for elevator maintenance

are followed throughout the BART system for all public use elevators; and

> (ii) Ensure that prompt repairs are made whenever an elevator feature that affects rider safety is malfunctioning or an elevator is out of service. This standard will require, at a minimum, that BART will dispatch a repair person or crew to the site of an elevator with a malfunctioning feature that affects rider safety or an out-of-service elevator within one hour after such elevator condition is discovered.

If BART cannot meet these standards using its in-house maintenance staff within 30 days of the date of this Order, then BART shall engage the services of a professional elevator repair company to supplement its in-house staff to the extent necessary to meet these standards.

In the alternative, Plaintiffs request that the Court appoint a special master to investigate and make recommendations on how to ensure adequate maintenance and repair of BART's elevators.

### II. Problems with BART Elevators

Plaintiffs have submitted the declarations of many class members who have encountered problems with BART's elevators.[1] Many class members have repeatedly been unable to use the elevators at BART Key Stations. *See, e.g.,* Coln Decl., Fang Decl., Ferreyra Decl., Gagliardi Decl., Hendrix Decl., Moss Decl., Nissen Decl. BART's own report indicates that more than 1400 "elevator incidents" occurred between January 1, 1996, and March 5, 1997, including 76 separate incidents in which passengers were trapped inside elevators. Kasnitz Decl.Ex. C.[2] Despite this large number of incidents,

---

1. Plaintiffs' declarations do not distinguish between problems encountered at "key stations" and at other stations. With regard to stations constructed prior to enactment of the ADA, the ADA requires only that designated key stations be made accessible to individuals with disabilities. 42 U.S.C. § 12147(b). The Court, therefore, will disregard evidence concerning incidents that occurred at stations that are not key stations. BART's key stations include the four downtown San Francisco stations, the three downtown Oakland stations, Daly City, Balboa Park, 24th Street, Richmond, El Cerrito del Norte, Berkeley, MacArthur, Concord, Walnut Creek, Coliseum, Bay Fair, Hayward, and Fremont (hereafter "Key Stations"). *See* Paradis Decl. in Support of Summary Adjudication, BART Key Station Plan.

2. The Court cannot determine at which stations these incidents occurred. Because BART had the opportunity to indicate which of these incidents did not occur at Key Stations, the Court infers that a significant portion of these incidents did occur at Key Stations. At least some of these incidents involved class members. *See, e.g.,* Barrett Decl., Ferreyra Decl., Regina Decl.

BART elevators have had an availability rate of over 97% since July, 1995. Dunn Decl. ¶ 7. BART admits, however, that individual elevators, especially at the Civic Center station, have been significantly less reliable because of repeated vandalism. Dunn Decl. ¶ 3.

Class members who have been trapped inside of, or unable to use, elevators have suffered substantial indignity and inconvenience. Their injuries range from the annoyance of taking additional time and effort to find a station with a functioning elevator, *see, e.g.,* Barnes Decl., Berne Decl., Coln Decl., Nissen Decl., to missed medical appointments and business opportunities, *see, e.g.,* Hendrix Decl., Moss Decl., Nandi Decl., Schumann Decl., to enduring frightening and potentially dangerous situations when trapped inside elevators, *see, e.g.,* Barrett Decl., Ferreyra Decl., Regina Decl.

Plaintiffs also point to problems with BART's elevators that pose a threat of catastrophic failure, in particular the pooling of hydraulic oil at the bottom of elevator shafts. BART, however, has hired an independent contractor to clean the elevator shafts. All pooled oil has now been removed, and the piston packings from which the hydraulic oil can leak have all been replaced. Clark Decl. ¶ 13(a).

Finally, BART's elevator inspection reports of 53 elevators indicate widespread problems. According to the reports, every elevator inspected had at least one feature that was in poor condition or inoperative. Eighteen percent of the systems and performance measures were classified as poor or inoperative. *See* Manning Decl.Exs. A, B.

### III. Elevator Maintenance and Repair

Plaintiffs contend that the problems class members encounter with BART elevators are the result of BART's failure to maintain and repair its elevators properly. BART concedes that, in the past, it was not able to perform as much preventive maintenance on its elevators as it would have liked. Clark

Decl. ¶ 4(c). By 1996, the number of mechanics qualified to work on elevators and escalators had dwindled to 14, despite authorization for twenty positions. The authorized number of elevator and escalator mechanics was increased to 24 in the fall of 1996 and to 28 in 1997. Clark Decl. ¶ 4(c), Dunn Decl. ¶ 8. BART, however, has not been successful in hiring new mechanics, largely, the parties agree, because of the difference between BART's hourly rates for elevator mechanics and private sector hourly rates. BART mechanics are paid approximately $24 per hour whereas private sector elevator mechanics receive $39 per hour. Clark Decl. ¶ 5. The wages BART pays are governed by collective bargaining agreements. *Id.*

Although the parties differ as to precisely how much preventive maintenance BART mechanics have been able to perform, it is clear that much of the maintenance work has been fairly cursory. For example, most of the route cards that were filled out after the performance of routine maintenance contain only the notation "NOP." *See* Manning Reply Decl.Ex. A. The individual in charge of BART's elevator maintenance section testified that "NOP" means "normal operating procedure." Mechanics would indicate "NOP" when they did not have time to perform a thorough inspection of elevator operation. "NOP" was a way of indicating that there were no serious problems with the elevator while shielding the identity of the mechanic in case a problem developed with the elevator. Kasnitz Reply Decl.Ex. C, Garth Depo. at 33:12–18.[3]

Finally, BART has had difficulty obtaining replacement parts in a timely manner. Kasnitz Decl.Ex. A, Vaughn Depo. at 10:18–19. This has exacerbated problems with repairing elevators speedily.

BART has therefore faced persistent problems in performing adequate maintenance on its elevators. Its inability to perform thorough preventive maintenance, in combination with problems resulting from vandalism, has

---

3. Plaintiffs suggest that "NOP" was actually synonymous with another notation that occasionally appeared on the route cards, "NOPM," which means "no preventive maintenance." The Court need not resolve this dispute because, even accepting BART's characterization, the evidence indicates that much of the preventive maintenance on elevators has been too hurried for mechanics to be willing to accept responsibility for it.

probably been a significant factor behind the problems encountered by class members.

### IV. Efforts by BART to Improve Elevator Service

BART has recently taken a number of steps to rectify the problems recounted above:

BART has redesigned the floors used in its elevators in order to eliminate degradation caused by urination. Floor degradation has been a significant factor in elevator door malfunctions. The redesigned floors consist of nonabsorbent materials that should not be damaged by urine or other liquids. The floors of ten elevators have been replaced so far, and BART plans to replace all damaged floors with the redesigned flooring. Dunn Decl. ¶ 5(b).

BART is completing plans for an elevator repair project that will overhaul the elevators in the original BART stations. Dunn Decl. ¶ 5(c).

BART instituted a "Dedicated Preventative Maintenance Program" on August 25, 1997, in which five regular BART mechanics and two trainees are assigned exclusively to elevator maintenance. Clark Decl. ¶ 10.

In November, 1996, BART began a two-year training program to prepare BART employees as elevator and escalator mechanics. Ten trainees enrolled in November, 1996, and should complete their training by November, 1998. Four more trainees will enter the program soon. Clark Decl. ¶¶ 6–7.

BART has also stepped up its use of outside contractors on specific projects. For example, it has awarded a contract for the cleaning of 58 station elevator hoistways. Dunn Decl. ¶ 8(c).

Finally, BART has instituted a number of other reforms, such as increasing its inventory of spare parts, eliminating reliance on parts that are difficult to acquire, reorganizing the elevator and escalator maintenance sections, and providing more training to its current mechanics. Dunn Decl. ¶ 9.

### DISCUSSION

### I. Legal Standard for Preliminary Injunctions

 The "function of a preliminary injunction is to maintain the *status quo ante litem* pending determination of the action on the merits." *Washington Capitols Basketball Club v. Barry,* 419 F.2d 472, 476 (9th Cir.1969). The moving party is entitled to preliminary injunction if it establishes either:

(1) a combination of probable success on the merits and the possibility of irreparable harm, or

(2) that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor.

*Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987); *California Cooler v. Loretto Winery,* 774 F.2d 1451, 1455 (9th Cir.1985); *see also Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir.1975); *County of Alameda v. Weinberger,* 520 F.2d 344, 349 (9th Cir.1975). When an injunction will affect the public, the Court should also determine whether the public interest favors the moving party. *Caribbean Marine Servs., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988).

 Preliminary injunctions that require the enjoined party to undertake affirmative conduct "should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharmaceuticals Corp.,* 7 F.3d 1399, 1403 (9th Cir.1993) (citing *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979)); *see also Martin v. International Olympic Comm.,* 740 F.2d 670, 675 (9th Cir.1984) (when party "seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction").

### II. Likelihood of Success on the Merits

 Plaintiffs argue that they have established likelihood of success on the merits of their ADA, Rehabilitation Act, California Disabled Persons Act, and common carrier causes of action.[4] Recipients of financial as-

---

4. Although Plaintiffs assert that they have estab-

lished likelihood of success on the merits of their

sistance from the United States Department of Transportation, including BART, must comply with the Rehabilitation Act. *See* 29 U.S.C. § 794(a). The standards for compliance with the ADA apply to entities covered by the Rehabilitation Act. 49 C.F.R. § 27.19(a). The ADA has also been incorporated into the California Disabled Persons Act, Cal.Civ.Code § 54(a). The outcome of Plaintiffs' ADA claim, therefore, will determine the outcome of their Rehabilitation Act and Disabled Person Act claims.

### A. ADA Requirements

■ The ADA provides that "no-qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services ... of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Failure to make key stations in rapid rail and light rail systems "readily accessible to individuals with disabilities, including individuals who use wheelchairs," constitutes discrimination under section 12132. 42 U.S.C. § 12147(b)(1). BART does not contest that members of the Plaintiff class who use wheelchairs are qualified individuals under the ADA or that it must comply with Department of Transportation regulations concerning the accessibility of specified "Key Stations" within the BART system.

Department of Transportation ADA regulations required BART's Key Stations to be accessible to individuals who use wheelchairs no later than July 26, 1993.[5] 49 C.F.R. § 37.47(a), (c)(1) Public entities providing transportation services must "maintain in operative condition those features of facilities ... that are required to make the vehicles and facilities readily accessible." 49 C.F.R. § 37.161(a). Accessibility features must be repaired promptly and the public entity must take reasonable steps to accommodate individuals with disabilities who would otherwise use a malfunctioning feature. 49 C.F.R. § 37.161(b). Section 37.161, however, "does

not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." 49 C.F.R. § 37.161(c).

### B. BART's Compliance with ADA Requirements

Plaintiffs have established that elevators at many BART Key Stations suffer recurrent problems that have resulted in the denial of access to BART to individuals with mobility disabilities. Inadequate elevator maintenance has probably been a significant factor behind these problems.

BART does not deny that elevator problems have occurred, but it maintains that the problems have been isolated and temporary. The regulations provide that isolated or temporary interruptions in service or access due to maintenance or repairs do not constitute violations of the ADA. *See* 49 C.F.R. § 37.161(c). The evidence submitted by Plaintiffs, however, indicates that the problems encountered by class members are not simply isolated or temporary interruptions due to maintenance or repairs. Declarations by class members indicate that disabled individuals have repeatedly encountered problems with elevators, especially at the downtown San Francisco BART stations, but at other Key Stations as well. Reports prepared by BART also indicate widespread problems. The elevator problems identified by Plaintiffs indicate a pattern of unreliable elevator service that cannot accurately be characterized as isolated or temporary interruptions.

BART also maintains that it generally responds to reports of elevator problems in less than one hour and that it provides paratransit services when elevators are out of order. Glynn Decl., Garth Depo. at 189:2–5. Although the ADA regulations do require BART to repair elevators promptly and to provide reasonable accommodations when elevators are out of order, *see* 49 C.F.R. § 37.161(b), they do not provide that prompt repair and reasonable accommodations serve

---

common carrier negligence cause of action, neither they nor BART briefed it. The Court, therefore, will not analyze their common carrier claim.

5. The one exception is the Twelfth Street station, for which the Federal Transportation Administration granted an extension.

as defenses to claims of ADA violations. The only limitation on liability specified in the regulations is the exception for temporary or isolated interruptions due to maintenance or repairs. *See* 49 C.F.R. § 37.161(c).

Plaintiffs have established a strong factual record that class members have been, and probably will continue to be, denied adequate access to the BART system because of malfunctioning elevators. They have also established that BART has a clear legal obligation to maintain reliable elevator service that provides individuals with mobility disabilities access to the BART system. Plaintiffs have therefore demonstrated a strong likelihood of success on the merits of their ADA claims with regard to elevator service. Because liability under the Rehabilitation Act and the California Disabled Persons Act turns on compliance with the ADA, Plaintiffs have also established likelihood of success on their Rehabilitation Act and Disabled Persons Act claims insofar as they pertain to elevator service.

### C. Mootness

BART argues in the alternative that, even if it is liable for past problems with elevator service, the initiatives it has recently undertaken to redress these problems moot Plaintiffs' request for injunctive relief. The Court's power to grant injunctive relief survives the discontinuance of the illegal conduct. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir.1992). BART has corrected some specific problems pointed out by Plaintiffs, such as pooling of hydraulic oil at the bottom of elevator shafts. Other problems, however, remain unresolved. The programs that BART is instituting now may improve the reliability of BART's elevators in the long run, but the record does not indicate that the problems with BART elevator service have already been solved. Plaintiffs'

request for injunctive relief, therefore, is not moot.

### III. Irreparable Injury

In addition to establishing likelihood of success on the merits, Plaintiffs must demonstrate a possibility of irreparable injury. *Rodeo*, 812 F.2d at 1217. The goals of the ADA include assuring that individuals with disabilities enjoy "equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101. Injuries to individual dignity and deprivations of civil rights constitute irreparable injury. *See Chalk v. United States Dist. Court*, 840 F.2d 701, 710 (9th Cir.1988); *Sullivan v. Vallejo City Unified School Dist.*, 731 F.Supp. 947, 961 (E.D.Cal.1990) (injury to ability to function as independent person constitutes irreparable injury).

The pattern of unreliable elevator service established by Plaintiffs indicates that class members frequently endure inconvenience and indignity as a result of malfunctioning elevators, and that these instances of inconvenience and indignity are likely to recur in the future. The difficulties class members have encountered with BART's elevators have therefore interfered with the accomplishment of the ADA's policy of assuring equal opportunity, full participation, independent living, and economic self-sufficiency to individuals with disabilities. Although BART has taken steps to correct problems with elevator service, its new programs will not be fully implemented immediately. Class members are therefore likely to continue to be subjected to the irreparable injuries that they have suffered in the past.

### IV. Appropriateness of Injunctive Relief

Despite Plaintiffs' likelihood of success on the merits and the probability that they will continue to suffer irreparable harm in the future, BART argues that injunctive relief is inappropriate. It asserts that the Court must defer to BART's judgment as to how to comply with the ADA, that BART's recent initiatives have eliminated any need for the Court to grant injunctive relief, and that the Court should delay any injunctive relief until

after BART's liability is determined on the merits.

 The Supreme Court and the Ninth Circuit have stressed that district courts must be sensitive to concerns of equity, federalism, and comity when considering injunctive relief against State agencies. *Rizzo v. Goode,* 423 U.S. 362, 375, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Thomas v. County of Los Angeles,* 978 F.2d 504, 508 (9th Cir.1992). A strong factual record is therefore necessary before a federal district court may enjoin a State agency. *Thomas,* 978 F.2d at 508. The Ninth Circuit requires a showing of pervasive and intentional misconduct before a district court may enjoin a State agency. *Thomas,* 978 F.2d at 508 (9th Cir.1992). Moreover, any injunction against a State agency must be narrowly tailored to enforce federal constitutional or statutory law. *Clark v. Coye,* 60 F.3d 600, 604 (9th Cir. 1995).

 Furthermore, the Ninth Circuit requires a stronger showing of likelihood of success in motions, like this one, for mandatory injunctive relief than in those for prohibitory injunctive relief. *Dahl,* 7 F.3d at 1403.

Here, Plaintiffs have established that there are pervasive problems with BART's elevators. These problems are, at least in part, the result of management decisions about how to allocate resources and personnel. Although federal courts must be deferential when evaluating management decisions of State agencies, State agencies may not disregard the clear requirements of federal law. Here, BART has been obliged to comply with the accessibility requirements of the ADA since July, 1993. More than four years after BART was to have brought its Key Stations into compliance with the ADA, BART is still failing to perform routine maintenance on Key Station elevators. Inadequate maintenance has been a significant factor behind the unreliability of BART elevators. The Court therefore finds that BART's management decisions have resulted in a pervasive pattern of neglected maintenance, which has resulted in repeated violations of the ADA.

BART's new initiatives to overhaul older elevators and improve elevator maintenance may ultimately remedy BART's problems with elevator reliability. Its recent decision to dedicate a team of mechanics to elevator maintenance, however, represents a significant shift away from BART's past practices. BART's promise to change established patterns of conduct is not sufficient to overcome the strong record of its past neglect. BART's other initiatives to train personnel and to overhaul older elevators are laudable, but will not significantly affect elevator service in the near future. BART's recent initiatives, therefore, do not establish that injunctive relief is no longer needed.

BART also argues that the timing of this motion weighs in favor of postponing the imposition of injunctive relief until BART's liability is determined at trial. Although Plaintiffs were clearly aware that BART's elevator service was unreliable when they filed this lawsuit in August, 1996, they only became aware of the lack of elevator maintenance during discovery. The timing of their motion, therefore, does not indicate that the problems with BART's elevator service are not as pressing as Plaintiffs contend. Given the pervasiveness of the problems Plaintiffs have identified and the last-minute nature of BART's new dedicated maintenance program, the timing of this motion is appropriate.

Moreover, Plaintiffs' proposed injunction largely requires BART to do what it says it is already planning to do. Given BART's past neglect of elevator maintenance, an injunction is an appropriate mechanism to ensure that competing priorities do not continue to overwhelm BART's obligation to comply with the ADA.

The Court therefore finds that neither the deference to which BART is entitled as a State agency nor BART's recent initiatives regarding elevator maintenance and repair are sufficient to outweigh the irreparable injuries that Plaintiffs have suffered in the past and are likely to continue to suffer in the immediate future.

Because Plaintiffs have established a strong likelihood of success on the merits and a probability of irreparable injury, the Court concludes that Plaintiffs have satisfied the

requirements for preliminary mandatory injunctive relief.

## V. Scope of Injunctive Relief

Plaintiffs request the Court to order BART to ensure that the original manufacturers' specifications for elevator maintenance are followed throughout the BART system for all public use elevators. Injunctions against State agencies, however, must be narrowly tailored to enforce federal law. *Clark,* 60 F.3d at 604. The ADA accessibility requirements discussed in this Order only apply to stations that BART has identified as Key Stations. The Court will therefore limit the scope of the injunction to public use elevators in BART's Key Stations.

In addition, Federal Rule of Civil Procedure 65(d) requires injunctions "to describe in reasonable detail, and not by reference to ... other document[s];" the enjoined conduct. The reference in the proposed injunction to "original manufacturer's specifications" is inconsistent with Rule 65(d)'s limitation on references to other documents. Plaintiffs, therefore, must provide the Court with appropriate excerpts from the original manufacturers' specifications that detail the elevator maintenance procedures that BART should follow. When the Court receives these excerpts, it will incorporate them into the injunction.

## VI. Bond

 Rule 65(c) provides that no preliminary injunction may issue "except upon the giving of security by the applicant, in such sum as the court deems proper." In noncommercial cases, however, courts should consider the hardship a bond requirement would impose on the party seeking the injunction in addition to the expenses the enjoined party may incur as a result of the injunction. *Elliott v. Kiesewetter,* 98 F.3d 47, 59 (3d Cir.1996). The Court may waive Rule 65(c)'s bond requirement when the balance of the equities weighs overwhelmingly in favor of the party seeking the injunction. *Id.* at 60. Here, it is possible that the injunction will not impose any additional costs on BART. Moreover, any additional costs that BART may incur will advance the public policy established by the ADA of enhancing the accessibility of public transportation to individuals with disabilities. Plaintiffs, in contrast have suffered, and are likely to continue suffering, irreparable harm as a result of BART's neglect of elevator maintenance. Accordingly, the Court will require Plaintiffs to post a minimal bond of one hundred dollars.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is GRANTED. When Plaintiffs provide the Court with appropriate excerpts from the original manufacturers' specifications and post their bond, the Court will issue an injunction in the form attached.