Juleus CHAPMAN et al., Plaintiffs,

v.

CA DEPT OF EDUCATION et al., Defendants.

No. C 01–01780 CRB.

United States District Court, N.D. California.

Feb. 21, 2002.

Alison M. Aubrejuan, Rhoda Benedetti, Disability Rights Advocates, Oakland, CA, Elizabeth J. Cabraser, Eve H. Cervantez, Morris A. Ratner, Mary Bondy Reiten, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, Melissa W. Kasnitz, Joshua Konecky, Disability Rights Advocates, Sid Wolinsky, Oakland, CA, for Learning Disabilities Ass'n of California, Jennifer Lyons, Ryan Smiley, Juleus Chapman.

Suzanne B. Giorgi, Douglas M. Press, Teresa L. Stinson, CA Attorney General's Office, Sacramento, CA, Michael Hersher, Amy Bisson Holloway, Cal. Dept. of Educ., Sacramento, CA, for Cal. Dept. of Educ., Cal. State Bd. of Educ., Delaine Eastin.

## ORDER RE: PRELIMINARY INJUNCTION

BREYER, District Judge.

Plaintiffs seek a preliminary injunction to halt the administration of the California High School Exit Exam ("CAHSEE") currently scheduled for March 5, 6, and 7, 2002. As an alternative, plaintiffs propose making the CAHSEE voluntary for all students. As set forth below, the Court concludes that plaintiffs have shown that preliminary relief is warranted. Absent a court order, the March administration of the CAHSEE is likely to violate rights guaranteed to learning disabled students under federal law. However, the scope of relief prayed for is not warranted. The Court has crafted an injunction that protects the rights of learning disabled students without derailing the State of California's efforts to improve education in the State.

## BACKGROUND

The CAHSEE was administered to freshmen in the class of 2004 on a voluntary basis in March 2001. On March 5, 6, and 7 of this year, the CAHSEE will be administered on a mandatory basis to all members of the class of 2004 (sophomores) who have not already passed the exam. Under current California law, members of the class of 2004 are required to pass the CAHSEE to receive a diploma. Cal. Ed. Code § 60851(a).

The plaintiff class consists of learning disabled students eligible for either an Individualized Education Program ("IEP") pursuant to the Individuals with Disabilities Education Act ("IDEA"), or a Section 504 Education Plan ("504 Plan") pursuant to the Rehabilitation Act of 1973. These plans, created by a team consisting of the student (where appropriate), parents, educators, and other professionals, are the blueprints of a learning disabled child's education. They assess the current performance of a child, set annual goals, and specify special education and related services a child is to receive.

Federal regulations require the IEP to specifically address state-wide assessments such as the CAHSEE. See 34 C.F.R. § 300.347(a)(5)(i) (The IEP must include a "statement of any individual modifications in the administration of State or district-wide assessments of student achievement that are needed in order for the child to participate in the assessment."). Where the IEP team determines that a child cannot participate in a particular state-wide assessment, even with modifications, the IEP must include a statement of why the state-wide assessment is not appropriate and how the child will be assessed. See 34

C.F.R. § 300.347(a)(5)(ii). The evidence before the Court, however, suggests that, with regard to the CAHSEE, most IEP teams have not had time to comply with these provisions.

IEPs in California do address other testing situations. For example, pursuant to their IEPs, the named plaintiffs take classroom tests with certain accommodations. Chapman uses a laptop computer. Smiley uses a calculator and a laptop computer and has his tests presented orally. Lyons is permitted to use a spell checker, a calculator, a computer, a scanner, and a tape recorder. Among other matters, this order addresses the extent to which similar accommodations are appropriate for the CAHSEE.

## DISCUSSION

Plaintiffs claim that a preliminary injunction is warranted on five independent grounds: 1) there is no alternate assessment to the CAHSEE, 2) required accommodations are not provided to learning disabled students taking the CAHSEE, 3) the test violates due process because it covers materials that students have had no opportunity to learn, 4) the test is invalid, and 5) the CAHSEE fails to conform to nationally recognized standards.

As set forth below, the Court concludes that a limited preliminary injunction is warranted based on the first and second of these grounds.

### I. Legal Standard

Traditionally, a preliminary injunction will issue where the plaintiff shows: 1) a likelihood of success on the merits, 2) the possibility of irreparable injury, 3) a balance of hardships favoring the plaintiff, and 4) that preliminary relief is in the public interest. *Barahona–Gomez v. Reno*, 167 F.3d 1228 (9th Cir.1999). This test has evolved into the modern test that the plaintiff must "demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987). While this test is phrased in the disjunctive, many courts view it as essentially a single test. Viewed as a single test, the greater the showing of likely success the lighter the burden in terms of the relative hardship, and vice versa. *See Regents of Univ. of Calif. v. ABC, Inc.*, 747 F.2d 511, 515 (9th Cir. 1984).

### II. Education Policy Generally

The Court notes at the outset that the State of California is afforded broad latitude in crafting public education policy and setting standards for students and educators. *See San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 42–43, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Brookhart v. Illinois State Bd. of Educ.*, 697 F.2d 179 (7th Cir.1983); *Debra P. v. Turlington*, 644 F.2d 397 (5th Cir.1981). Respecting the state's role in education policy under our system of federalism, this Court "will interfere with educational policy decisions only when necessary to protect individual statutory or constitutional rights." *Brookhart*, 697 F.2d at 182. Accordingly any relief must be "narrowly tailored to enforce federal constitutional and statutory law only." *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir.1995).

### III. Likelihood of Success

#### A. Standing and Ripeness

■ Defendants claim that plaintiffs lack standing and their claims are not yet ripe for adjudication. Defendants argue that plaintiffs lack standing because they are unable to show particularized or immi-

nent injury. In particular, defendants point to the fact that no student has taken a mandatory CAHSEE. Furthermore, no student can show that failure on the CAHSEE will result in denial of a diploma.

"In order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining some direct injury as a result of the challenged statute or official conduct." *Armstrong v. Davis,* 275 F.3d 849, 860 (9th Cir.2001) (internal citation omitted). However, in a class action, as alleged here, the Court may consider injuries alleged by name plaintiffs "in the context of the harm asserted by the class as a whole, to determine whether a credible threat" of injury to the named plaintiffs exists. *Id.* Based on this framework, the Court concludes that the named plaintiffs have standing.

Plaintiffs do not have to take and fail a defective exam to have standing. Furthermore, under the IDEA, plaintiffs have a statutory right to meaningful inclusion in a state-wide assessment, such as the CAHSEE, whether they pass or not. That right is violated, and harm is suffered, at the time the exam in administered. The presence of harm is not dependent upon how the results are used.

Defendants make a related ripeness argument. This argument centers around the fact that development of the CAHSEE is a highly dynamic process. Defendants argue that they need the data of several CAHSEE administrations to finalize policies. They argue that the pass rate is likely to be significantly higher in the future. Defendants also point to a provision in the law permitting the Board to delay the date upon which the CAHSEE becomes a graduation prerequisite. Cal. Ed. Code § 60859.

The Court accepts all of this as true. However, the CAHSEE has already been administered once and will be administered again in March. While the Board may delay the effective date at which the CAHSEE becomes a graduation requirement, the fact remains that under current law the class of 2004 must either pass the CAHSEE or be granted a waiver to receive a diploma. The mere possibility that intervening action might rectify allegedly illegal behavior does not render this lawsuit unripe.

Even more fundamentally, as stated above, plaintiffs have a right to be meaningfully included in the March CAHSEE, regardless of how the test results are used. This suit is ripe.

## B. Private Right of Action

■ Defendants claim that there is no private right of action to enforce the IDEA's provisions regarding accommodations and alternate assessments. No case cited by either party specifically addresses a private right of action under these provisions.

The IDEA specifically provides a private right of action, after exhaustion of administrative remedies, for claims "relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). Defendants claim that the inclusion of these specific rights of action evinces a Congressional intent to preclude a private right of action for other matters.

However, as recognized by the Third Circuit in *Beth V. by Yvonne V. v. Carroll,* 87 F.3d 80 (3rd Cir.1996), the statute does not just provide a private right to ensure provision of a free appropriate public education. It provides a private right of action for "*any matter relating to* . . . the provision of a free and appropriate public education.*" 20 U.S.C. § 1415(b)(6) (emphasis added). On the basis of this language, the *Beth V.* court

permitted a private action seeking injunctive and declaratory relief against the Pennsylvania Department of Education for allegedly failing to comply with federal regulations governing the handling of complaints. *See id.*

Therefore, because meaningful participation in state-wide assessments such as the CAHSEE is an important aspect of public education, it is protected by a private right of action under the IDEA.

### C. Exhaustion of Administrative Remedies

■ The IDEA requires that administrative remedies be exhausted before filing a civil action in some cases. *See* 20 U.S.C. § 1415(i)(2)(A). As stated by the Ninth Circuit, the IDEA's "exhaustion requirement ... recognizes the traditionally strong state and local interest in education, as reflected in the statute's emphasis on state and local responsibility." *Hoeft v. Tucson Unified School Dist.,* 967 F.2d 1298, 1303 (9th Cir.1992). However, a party is not required to exhaust administrative remedies where such efforts would be futile or administrative remedies are inadequate. *See id.* at 1303–04. Nor is plaintiff required to exhaust administrative remedies where they challenge a policy or practice of general applicability. *See id.*

In this case the plaintiffs are challenging the general policies of the defendants in administering the CAHSEE exam. Accordingly, the Court finds that the exhaustion requirement is unlikely to bar this action.

### D. Alternate Assessment

■ Plaintiffs claim that some members of the class are entitled to an "alternate assessment" to the CAHSEE, under the IDEA. The IDEA "provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures." *Ojai Unified School Dist. v. Jackson,* 4 F.3d 1467, 1469 (9th Cir.1993). With regard to an alternate assessment, the IDEA requires the following:

> Children with disabilities are included in general State and district-wide assessment programs, with appropriate accommodations, where necessary. As appropriate, the State or local educational agency-
>
> (i) develops guidelines for the participation of children with disabilities in alternate assessments for those children who cannot participate in State and district-wide assessment programs; and
>
> (ii) develops and, beginning not later than July 1, 2000, conducts those alternate assessments.

20 U.S.C. § 1412(a)(17)(A).

Unfortunately there is no case law defining an "alternate assessment" in the context of the IDEA to guide the Court in this case. As defined in the academic literature, an alternate assessment could include an interview and/or oral presentation, teacher observations, checklists and inventories, or a review of a portfolio of the student's work over an academic period. Despite this ambiguity, it is clear that no alternate assessments were offered for the 2001 administration of the CAHSEE.

There is evidence before the Court that some students are unable to meaningfully access the CAHSEE regardless of the accommodations and/or modifications offered. *See* Declaration of Dr. Susan Vogel; Declaration of Dr. Kay Runyan. For these students, the CAHSEE will not be a valid measure of their academic achievement. Some of these students are performing at a high school level and have mastered the CAHSEE subject matter. *See* Vogel Decl. ¶ 11; Runyan Decl. ¶ 10–14. Some of these students are unable to

master a high school level curriculum. *See* Vogel Decl. ¶ 11; Runyan Decl. ¶ 15–20. As is clear from the language of the IDEA, both sets of students are entitled to an alternate assessment. The fact that some of these students are incapable of mastering the content of the CAHSEE is of no importance; they are still entitled to a valid assessment of their capabilities.

Defendants argue that the waiver policy satisfies the IDEA's requirement for an alternate assessment.[1] The waiver policy is evolving. But in its present form, the Court concludes that the waiver policy is unlikely to satisfy the IDEA requirement for an alternate assessment because: 1) the school district not the individual applies for the waiver, 2) the school district has discretion in determining whether to apply for the waiver, and 3) the State Board of Education retains discretion in determining whether to grant a waiver. *See* California State Board of Education Policy 01–07 at 1. By contrast the IDEA creates an entitlement on the part of *individual* students.

The State has proposed regulations that would require the school district to apply for a waiver. *See* California State Board of Education document dated January 2002. However, even under the proposed regulations the State Board of Education retains discretion in determining whether to grant a waiver.

But a further, more fundamental, problem exists under any even speculative version of the waiver policy. The waiver policy does not address that group of students unable to access the CAHSEE regardless of the accommodations and/or modifications provided. As discussed above, the evidence before the Court shows that there are individuals for whom the CAHSEE, even with modification, will not be an accurate measure of academic achievement. For these individuals, the State's waiver policy is meaningless, and therefore cannot satisfy the IDEA requirement for an alternate assessment. For these individuals the waiver policy is meaningless because the possibility of a waiver is only triggered when a student achieves the equivalent of a passing score on the CAHSEE—a test that they are unable to access. Even if the State can ultimately deny a high school diploma to these students, a question which the Court does not reach today, the State cannot deny these students a meaningful assessment of their academic achievement when such an assessment is available to all other students.

### E. Accommodation

The question of accommodation on the CAHSEE is substantially confused by the tendency to conflate two separate and distinct issues. The first issue is what accommodations and/or modifications are students entitled to when actually taking the CAHSEE. The second distinct issue is whether federal law requires the State to treat scores achieved with certain accommodations and/or modifications the same way it treats scores achieved by students without accommodation and/or modification. With the CAHSEE only days away, the Court must address the first issue now. No similar urgency requires an answer to the second issue. Any benefit to an immediate answer to the question of what the State must do with the test scores is outweighed by the benefit of extra time to brief and deliberate the issue fully.

---

1. Defendants had previously argued that the IDEA does not apply to the CAHSEE because the CAHSEE is not a "state-wide assessment," but rather a tool for measuring individual achievement. It is not clear whether defendants still make this argument. Regardless, by both the terms of the IDEA and the California implementing statute, the Court is convinced that the IDEA applies to the CAHSEE.

With the understanding that the Court is focused on the issue of what accommodations must be permitted in actually taking the test, the starting point is again the language of the IDEA which provides:

Children with disabilities are included in general State and district-wide assessment programs, with appropriate accommodations, where necessary. As appropriate, the State or local educational agency-

20 U.S.C. § 1412(a)(17)(A). The regulations contain similar language:

Children with disabilities are included in general State and district-wide assessment programs, with appropriate accommodations and modifications in administration, if necessary

34 C.F.R. § 300.138.

In defining "appropriate accommodations" under the IDEA the most logical place to look would be to a student's IEP or 504 plan. However, the IDEA does not explicitly incorporate this definition, and there is some limited authority suggesting that the definitions are not identical.

For example, in *Alabama Dept. of Educ.*, 29 IDELR 249 (1998), the Office for Civil Rights (OCR) in the U.S. Department of Education, concluded that a state could deny the use of a reading device for a graduation exam, even though the student's IEP permitted it. However, the OCR, by the terms of this decision and others cited by defendants, is charged with interpreting and enforcing Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, not the IDEA. The specific reference to an IEP plan, which is provided for by the IDEA, is somewhat incongruous in this context, but the decision by its terms does not express an opinion as to the permissibility of the state policy under the IDEA.

Defendants also cite to an Indiana Court of Appeals decision. In that case, the court found that the state did not have to permit test taking accommodations prescribed by the IEP to students taking an high school exit exam. *See Rene ex rel. Rene v. Reed*, 751 N.E.2d 736, 746–47. However, that case reached its conclusion with little analysis. To the extent it holds that students are not entitled to accommodations during test taking this Court disagrees.

The Court finds a U.S. Department of Education memorandum, from the Office of Special Education Programs, entitled "Guidance on Including Students with Disabilities in Assessment Programs," more persuasive in construing the accommodations requirement of the IDEA. In discussing design of IEP plans, the memorandum states:

IDEA gives the IEP team the authority to determine what, if any, accommodations or modifications are needed in order for a child with a disability to participate in an assessment. However, state and local school agencies have the authority to determine how test scores are reported and used, and the may limit the use of test scores if certain accommodations or modifications are involved.

Memorandum from the U.S. Department of Education, Office of Special Education Programs, to State Directors of Special Education et al., #10 (January 17, 2001), *available at* http://www.ed.gov/offices/OSERS/OSEP/Products/omip.html. As this memo suggests, an "appropriate accommodation" under the IDEA is one necessary to access the test. *Id.* at #6. In the context of the CAHSEE therefore, an "appropriate accommodation" is any accommodation necessary to render a student's score on the CAHSEE a meaningful measure of that student's academic achievement. The determination of what specific accommodations are appropriate for any specific student is ultimately best left to the IEP and Section 504 process.

The Court's preliminary judgment is that the Department of Education memorandum best reconciles a state's wide discretion to set and implement education policy with the IDEA's basic mandate that all students be accorded meaningful participation in any state-wide assessment programs. The state must permit accommodations necessary for a student to access a state-wide assessment such as the CAHSEE. This way a student's score provides a meaningful measure of achievement. This type of feedback when measured against clearly articulated standards helps hold educators accountable for teaching all students—a key goal of the IDEA. The feedback is also valuable to students and parents.

At the same time, a state may set specific standards and require any student seeking a diploma to satisfy them. Of course, federal law places some limits on a state's discretion to set educational standards. Those limits are not set today. By requiring all appropriate accommodations, the IDEA does not interfere with the state's prerogative to set these standards; it merely ensures that the state is held to account for its efforts in helping all students meet them.

#### F. Other Substantive Arguments

The plaintiffs have not made a showing of likely success on the merits in their other substantive claims. Plaintiffs have cited limited case law supporting the proposition that it is a violation of due process to test students on material they have not had an adequate opportunity to learn. However, the present state of the evidence does not reveal an asymmetry between what students are taught and the material tested on the CAHSEE implicating due process concerns. Plaintiffs' arguments regarding test validity boil down to a battle of experts. At this point the Court cannot credit one expert over another.

#### G. Conclusion

The Court concludes that plaintiffs have shown they are likely to prevail on two separate IDEA claims. First, it appears that the IDEA requires school districts to permit students to take the CAHSEE with appropriate accommodations. Second, under the IDEA it appears that the State must provide an alternate assessment to the CAHSEE to students who are unable to access the test due to a learning disability.

Normally the State would be required to permit accommodations or offer an alternate assessment only to the extent they were prescribed by a student's IEP or Section 504 plan. However, in this instance, the Court concludes that IEP and Section 504 teams have not had sufficient time or notice to address the CAHSEE. Therefore students and parents should not be penalized if a plan fails to address the CAHSEE specifically.

### IV. Possibility of Irreparable Injury

█ As stated above, administration of the CAHSEE threatens to violate specific statutory rights of learning disabled students. Regardless of how the CAHSEE scores are used, the plaintiffs have a right to participate meaningfully in the assessment provided by the CAHSEE. As stated above, it appears that administration of the CAHSEE will violate this right. Furthermore, because the receipt of a diploma is conditioned upon passage of the CAHSEE, administration of the CAHSEE without protections plaintiffs may be entitled to under federal law could effectively deny plaintiffs an opportunity to receive a diploma.

Both of these injuries, one probable and the other possible, implicate a dignity interest in full participation in the educational process. Harm to a student's dignity and educational prospects constitutes ir-

reparable injury. *See Cupolo v. Bay Area Rapid Transit,* 5 F.Supp.2d 1078, 1084 (stating that "[i]njuries to individual dignity and deprivations of civil rights constitute irreparable injury" with regard to the ADA); *see also Chalk v. United States Dist. Court,* 840 F.2d 701, 710 (9th Cir. 1988) (finding that reassignment to different job constitutes irreparable injury, even though pay was equivalent, due to psychological harm).

## V. Balance of Hardships/Scope of Relief

■ Because plaintiffs have shown a likelihood of success on the merits and the possibility of irreparable harm, preliminary relief is warranted. Having made this showing, however, the scope of relief remains to be determined. Only a small portion of students scheduled to take the CAHSEE in March are members of the plaintiff class.

As stated above, *see* section II *supra,* the State is afforded wide discretion in crafting education policy and setting standards. The Court will not second guess the judgment of the State of California that the CAHSEE is a vital component of a standards-based reform effort. Indeed, California is not alone in this judgment. Twenty-seven states have high school exit exams. *See* American Federation of Teachers, *Making Standards Matter 2001* at 5, 29 *available at* http://www.sft.org/ed-issues/standards/MSM2001/Index.htm. Indeed the IDEA itself expresses the opinion that learning disabled students can benefit from higher expectations and standards. *See* 20 U.S.C. § 1400(c)(5) ("Over 20 years of research and experience has demonstrated that the education of children with disabilities can be made more effective by

... having high expectations for such children and ensuring their access in the general curriculum to the maximum extent possible."). Accepting the State's judgment that the CAHSEE is a vital component of an effort to improve public education, the Court has no trouble concluding that granting plaintiffs the relief they seek, either enjoining the March administration of the CAHSEE altogether or making it voluntary for all students, would impose significant hardship on the State. Indeed, in determining the appropriate scope of preliminary relief, this Court must consider the general public interest served by permitting the March CAHSEE to go forward. *See Caribbean Marine Services Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988) ("[T]he district court must consider the public interest as a factor in balancing the hardships when the public interest may be affected.")

Because education is a core state function, relief from this Court must be "narrowly tailored" and constrain a state's actions only where necessary to protect the individual rights of the class members. *See Clark v. Coye,* 60 F.3d 600, 604 (9th Cir.1995).

## CONCLUSION

Therefore, the Court ORDERS as follows:

(1) Students shall be permitted to take the CAHSEE with any accommodations or modifications[2] their IEP or Section 504 plan specifically provides for the CAHSEE. If a student's IEP or Section 504 plan does not address the CAHSEE specifically, the student shall be permitted to take the CAHSEE with any accommodations or modifications their IEP or Section

---

**2.** California has defined an "accommodation" as a change in the CAHSEE (in format, student response, timing, or other attribute) that does not invalidate the score achieved. California has defined a "modification" as a change in the CAHSEE that invalidates the test score because it fundamentally alters what the test measures.

504 plan provides for standardized testing. If a student's IEP or Section 504 plan does not address either the CAHSEE specifically or standardized testing generally, the student shall be permitted to take the CAHSEE with any accommodations or modifications their IEP or Section 504 plan provides for general classroom testing.[3]

(2) A student may choose to forego any accommodation or modification to which he or she is entitled under this Order.

(3) At its December 5, 2001 meeting, the State Board of Education adopted policy number 01–07, "California High School Exit Examination: Waiver of Test Passage for Specific Special Education Students." Pending further order of this Court, defendants may grant, but may not deny, a waiver under this policy.

(4) If a student's IEP or Section 504 plan specifically provides for an alternate assessment in lieu of the CAHSEE, an alternate assessment shall be provided. If a student's IEP or Section 504 plan does not specifically address the CAHSEE but provides for an alternate assessment in lieu of general standardized testing, an alternate assessment to the CAHSEE shall be provided. If a student's IEP or Section 504 plan does not specifically address the CAHSEE or standardized testing but provides for an alternate assessment in lieu of general classroom testing, an alternate assessment to the CAHSEE shall be provided.

(5) The State is directed to develop an alternate assessment to the CAHSEE forthwith. Students identified as entitled to an alternate assessment in (4) above shall not be required to take the CAHSEE, but may do so if they choose. The State shall provide an alternate assessment to the CAHSEE to these students as soon as practicable.

(6) In order for a student covered by this Order to avail himself or herself of any rights under this Order, no additional IEP or Section 504 team meeting shall be necessary.

(7) Nothing in this Order shall be interpreted to prevent the State from continuing to develop its regulations and policies regarding the CAHSEE.

(8) The State shall direct all school districts to provide a copy of Appendix A to all parents and guardians of children with a IEP or Section 504 plan.

(9) As stated above, the Court reserves for future consideration the issues of whether, and to what extent, the State may treat students taking the CAHSEE with an unapproved modification or given an alternate assessment differently from other students with respect to the granting of a diploma.

(10) The parties are ordered to appear at 10 a.m. on June 7, 2002 in Courtroom 8 to advise the Court on the status of the matters discussed herein.

(11) This Order shall remain in effect until further order of the Court.

**IT IS SO ORDERED.**

### Appendix A

**NOTICE TO ALL PARENTS AND GUARDIANS OF CHILDREN WITH AN INDIVIDUALIZED EDUCATION PROGRAM (IEP) OR A SECTION 504 PLAN**

The case *Juleus Chapman, et al. v. California Department of Education, et al.,*

---

**3.** The plaintiff class consists of all students eligible for an IEP or Section 504 plan. This order, however, provides relief only to students with such a plan. The Court finds the practical difficulties of providing relief to the entire class insurmountable. Furthermore, states are already under an affirmative obligation to identify students needing special education and related services. Of course, the Court expects those efforts to continue.

No. C 01–1780 CRB is currently pending in the United States District Court for the Northern District of California. Plaintiffs in the case, a group of learning disabled students, claim that the California High School Exit Exam (CAHSEE), to be given to tenth graders on March 5, 6, and 7, 2002, violates rights guaranteed to learning disabled students under federal law. The Court has issued an Order that requires the March CAHSEE to be administered in accordance with the following procedures:

(1) Students shall be permitted to take the CAHSEE with any accommodations or modifications[1] their IEP or Section 504 plan specifically provides for the CAHSEE. If a student's IEP or Section 504 plan does not address the CAHSEE specifically, the student shall be permitted to take the CAHSEE with any accommodations or modifications their IEP or Section 504 plan provides for standardized testing. If a student's IEP or Section 504 plan does not address either the CAHSEE specifically or standardized testing generally, the student shall be permitted to take the CAHSEE with any accommodations or modifications their IEP or Section 504 plan provides for general classroom testing.

(2) Some of the accommodations and modifications to which students are entitled under this Order, pursuant to (1) above, have already been approved by the State. With regard to others, the State has determined that they will "invalidate" the test score and a waiver will be required before a diploma is granted. While this Order requires that students be permitted to take the CAHSEE with any accommodations or modifications defined in (1) above, the Court has not yet decided how taking the CAHSEE with a modification not approved by the State will affect the receipt of a diploma. A student may choose to forego any accommodation or modification to which he or she is entitled under this Order.

(3) If a student's IEP or Section 504 plan specifically provides for an alternate assessment in lieu of the CAHSEE, an alternate assessment shall be provided. If a student's IEP or Section 504 plan does not specifically address the CAHSEE but provides for an alternate assessment in lieu of general standardized testing, an alternate assessment to the CAHSEE shall be provided. If a student's IEP or Section 504 plan does not specifically address the CAHSEE or standardized testing but provides for an alternate assessment in lieu of general classroom testing, an alternate assessment to the CAHSEE shall be provided. Students entitled to an alternate assessment shall not be required to take the CAHSEE, but may do so if they chose.

(4) While this Order requires that an alternate assessment be provided to certain students, the Court has not yet decided how an alternate assessment will affect the receipt of a diploma.

(5) In order for a student covered by this Order to avail himself or herself of any rights under this Order, no additional IEP or Section 504 team meeting shall be necessary.

---

1.  California has defined an "accommodation" as a change in the CAHSEE (in format, student response, timing, or other attribute) that does not invalidate the score achieved. California has defined a "modification" as a change in the CAHSEE that invalidates the test score because it fundamentally alters what the test measures.